UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| CHRISTINE SANDAGE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 3:07-cv-0049-SEB-WGH |
| vs. ) | |
| ) | |
| BOARD OF COMMISSIONERS OF ) | |
| VANDERBURGH COUNTY, INDIANA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS**

This cause comes before the Court on Defendants' Motion to Dismiss (Docket No. 24), filed July 3, 2007. On April 22, 2005, Sheena Sandage-Shofner and Alfonzo Small were murdered by Travis Moore, an inmate of the Vanderburgh Community Correctional Center, while Moore was on work release. Plaintiffs Christine Sandage, Personal Representative of the Estate of Alfonzo Small and Co-Representative of the Estate of Sheena Sandage-Shofner, and Arthur Shofner, Co-Representative of the Estate of Sheena Sandage-Shofner, brought this civil rights action under 42 U.S.C. § 1983 (2000) against Defendants on April 17, 2007, alleging that various acts and omissions of the Defendants are the proximate cause of the decedents' murders, which deprived them of life without due process of law, in violation of the Fourteenth Amendment. In addition, Plaintiffs allege the Defendants are liable for the decedents' deaths under state tort law. Defendants, the Board of Commissioners of Vanderburgh County, Indiana, the Vanderburgh County Sheriff's Department, Sheriff Brad Ellsworth, and Deputy Sheriff

Tonda Mattingly, contend that Plaintiffs fail to state a claim upon which relief may be granted and that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). For the reasons detailed in this entry, we GRANT Defendants' motion. In addition, we decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

## **Factual Background**

The facts described in Sandage and Shofner's First Amended Complaint for Damages are as follow: On June 1, 2004, Travis Moore began serving a four-year sentence at the Vanderburgh County Correctional Center for the crime of robbery. (Am. Compl. ¶ 17.) While serving his sentence, the Vanderburgh County Sheriff's Department authorized Moore to perform work release, permitting him to have periodic furloughs from the Vanderburgh Community Correctional Center ("Correctional Center") to work at Porter Parking, where he was to be supervised by his father, Roderick Moore, who was employed by that company. (Id. ¶ 19.) Upon completion of his daily duties at Porter Parking, Moore was required to return to the Correctional Center. (Id.)

However, Moore did not always strictly adhere to the terms of his work release. On February 2, 2005, a Petition to Revoke his release was filed against Moore for having returned to the Correctional Center three hours late and testing positive for marijuana and methamphetamines (Id. ¶ 22.) As a result of this violation, Moore was ordered returned to the Vanderburgh County Jail. (Id.) However, Moore was again permitted to be housed at the

Correctional Center – and his work release privileges were restored – after he confessed to the violations. (Id. ¶ 22-23.)

On March 22, 2005, Sergeant Tonda Mattingly of the Vanderburgh County Sheriff's Department received a telephone call from Sheena Sandage-Shofner who complained that Moore had been harassing her during the time he was out on work release. (Id. 2¶ 24.) Despite Sandage-Shofner's complaint, Moore's work release privilege was not revoked. (Id.) Moore continued to harass Sandage-Shofner, prompting her on April 20, 2005, to make another call to the Vanderburgh County Sheriff's Department and reiterating her complaint. (Id. ¶ 25). Sandage-Shofner's second call had no more effect than the first: Moore remained at the Correctional Center and was permitted to leave each day to work at Porter Parking.

Early on the morning of April 22, 2005, while on release from the Correctional Center and working for Porter Parking, Travis Moore went to Sheena Sandage-Shofner's apartment. (Id. 1194149 ¶ 20.) After breaking in, he found four people inside the apartment: Sheena Sandage-Shofner, Alfonzo Small, Tara Jenkins, and Lucas Hensley. (Id.) Using the handgun he had carried with him, he shot and killed everyone in the apartment with the exception of Lucas Hensley. (Id.) Moore then turned the gun on himself and committed suicide (Id.)

## Standard of Review

Defendant's motion, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), seeks the dismissal of Plaintiffs' claims for damages under § 1983 for failure to state a claim upon which relief may be granted. A party moving to dismiss a complaint bears a weighty burden; it

must show that the pleadings themselves fail to provide any basis for any claim for relief under any set of facts. Ed Miniat, Inc. v. Globe Life Ins. Group Inc., 805 F.2d 732, 733 (7th Cir. 1986).

As a practical matter, dismissal under Rule 12(b)(6) is likely to be granted only in a case in which the allegations of the complaint clearly demonstrate that the plaintiffs have no claim. Owner-Operator Indep. Drivers Ass'n v . Mayflower Transit, Inc., 161 F. Supp. 2d 948, 951 (S.D. Ind. 2001).  In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true and construe all inferences that reasonably may be drawn from those facts in the light most favorable to the nonmovant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

**Discussion**

Plaintiffs assert a § 1983 violation under the Civil Rights Act for the deprivation of their rights, privileges, or immunities secured by the Constitution and laws by a person acting "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory." 42 U.S.C. § 1983 (2000).  To state a claim under § 1983, a plaintiff must show that:  (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law. Windle v. City of Marion, Indiana, 321 F.3d 658, 661 (7th Cir. 2003).

In this case, neither party disputes the fact that the Defendants were acting under color of state law when they deemed Travis Moore suitable for work release and when they allowed him to remain on work release despite Sheena Sandage-Shofner's harassment complaints.  Thus, the legal issue before us is whether the Defendants deprived Sheena Sandage-Shofner and Alfonzo

Small of a constitutional right when they failed to deny or revoke Travis Moore's work release privileges.

Plaintiffs argue that the Due Process clause of the Fourteenth Amendment imposed a duty on Defendants that they failed to meet when they failed to protect Sheena Sandage-Shofner and Alfonzo Small by allowing Travis Moore to remain on work release despite their awareness that he was harassing Sheena Sandage-Shofner at times when he should have been at work or at the Correctional Center.  According to Plaintiffs, this failure deprived Sandage-Shofner and Small of their lives without due process of law.  Defendants, while empathizing fully with regard to the tragedy of the decedents' untimely deaths, maintain that Plaintiffs' complaint fails to state a claim upon which relief can be granted because the decedents suffered no constitutional injury.

The Supreme Court has made clear that "the Due Process Clause is a limitation on the state's power to act, not a guarantee of certain minimal levels of safety." Monfils v. Taylor, 165 F.3d 511, 516 (7th Cir. 1999) (citing DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195 (1989)).  "The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982).  Therefore, in general, a "failure to protect does not rise to the level of a constitutional violation." Windle v.City of Marion, 321 F.3d 658, 661 (7th Cir. 2003).

## State-Created Danger Exception

Although the Supreme Court held in DeShaney that a failure to protect was not a constitutional violation, it left open the possibility that such a failure could be actionable if the

5

state created or exacerbated the danger from which it failed to protect the victim: "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." DeShaney, 489 U.S. at 201. Based on this language, courts of appeals have created the "state-created danger" exception. Windle, 321 F.3d at 661; see, e.g., Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir. 1993). Under this exception, a plaintiff states a claim for a civil rights violation if she alleges state action created, or substantially contributed to the creation of a danger, or rendered citizens more vulnerable to danger than they otherwise would have been. Reed, 986 F.2d at 1126; see also Monfils v. Taylor, 165 F.3d 511, 516 (7th Cir. 1999). This exception recognizes that, in certain cases, there arises not a right to protection but a right not to be placed in harm's way by state officials. Monfils, 165 F.3d at 516.

Plaintiffs contend that Defendants' failure to remove Travis Moore from the work release program after Sheena Sandage-Shofner had complained to them of the harassing behavior created a danger to her and those around her that would not otherwise have existed. "[I]f Travis Moore had been taken off work release and placed into the general jail population, he could not have continued harassing Decedents, and would not have been able to shoot and kill them on April 22, 2005." (Pl.'s Brief in Resp. to Def.'s Mot. to Dismiss at 6.) Defendants counter that these allegations are insufficient to allow recovery against them because Plaintiffs have failed to allege any affirmative acts taken by Defendants that created, or exacerbated, a danger to the decedents: "[c]laiming that the . . . Defendants *should have* acted is not enough to support a § 1983 claim." (Def.'s Reply Brief in Support of Their Mot. to Dismiss at 2.)

Recently, in King v. East St. Louis School District 189, 496 F.3d 812 (7th Cir. 2007), the

6

Seventh Circuit set out a three-part test by which to evaluate claims of liability under the "state-created danger" exception:

> First, in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience.

King, 496 F.3d at 817-18. To successfully state a claim under the "state-created danger" doctrine, all three parts of the test must be satisfied. Because Plaintiffs' claim fails to satisfy any part of the test, Plaintiffs' claim fails to state a claim upon which relief can be granted.

## **Affirmative Acts and the Creation of Danger**

To satisfy the first part of the test announced in King, a plaintiff must establish that affirmative acts taken by the defendant created or increased the danger to an individual. "What actions did [the state actor] affirmatively take, and what dangers would [the victim] otherwise have faced?" Windle, 321 F.3d at 661 (quoting Wallace v. Adkins, 115 F.3d 427, 430 (7th Cir. 1997)). The Seventh Circuit has declared that a failure to act does not constitute such affirmation action: "The term 'affirmative act' suggests a willful deviation from the *status quo*. Thus, an affirmative act will have as a counterpoint a non-affirmative position. Typically, this involves inaction." Windle, 321 F.3d at 662 n.2.

Plaintiffs allege that ignoring Sheena Sandange-Shofner's complaints and knowingly leaving Travis Moore on work release were affirmative acts taken by Defendants that created and/or increased the danger to the decedents. However, neither of these failures to act can be

deemed to be an affirmative action under the analysis employed in Windle.  Under Plaintiffs' reasoning, there was no non-affirmative position for the Defendants to have taken:  both doing something (i.e., taking Travis Moore off work release) and doing nothing (i.e., leaving Travis Moore on work release) are affirmative acts.  Windle, 321 F.3d at 662 n.2.  "This is simply illogical."  Id.

Furthermore, even if the Defendants' act of allowing Travis Moore to remain on work release could be categorized as an affirmative act, that act did not create the danger to the decedents or render them more vulnerable to it.  To illustrate this point, the circumstances and reasoning of  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), are instructive.  In DeShaney, the petitioner was a minor child who had been severely beaten by his father, rendering him mentally retarded. Id. at 192.  The respondents, the county department of social services and several of its social workers, had received several complaints that Joshua was possibly being abused by his father and even, at one point, had removed Joshua from his father's custody. Id.  However, respondents eventually released Joshua back to his father's custody; subsequently, Joshua's father beat him so severely as to cause brain damage.  Id. at 193.  Represented by his mother, Joshua argued that the respondents had deprived him of his liberty without due process of law by failing to intervene to protect him against a risk of which they knew or should have known. Id.  The Supreme Court ruled that the state's failure to protect Joshua did not constitute a violation of the Due process Clause.  Id. at 195-96.

To reach this holding, the Supreme Court expressly rejected the petitioner's contention that the state had created the danger to Joshua when it placed him back in his father's custody:  "While the State may have been aware of the dangers that Joshua faced in the free world, it

played no part in their creation, nor did it do anything to render him any more vulnerable to them." Id. at 201.

Plaintiffs' claims in the instant case are anchored by a similar contention: that Defendants created the danger to the decedents when they allowed Travis Moore to remain on work release. However, as with the petitioner in DeShaney, Plaintiffs misunderstand what it means for the state to "create danger." As the respondents in DeShaney did not make Joshua's father violent, Defendants here did not create or encourage Travis Moore's violent tendencies. The danger to the decedents was created by the already-existing, violent nature of Travis Moore – not his temporary work release. Defendants' failure to remove Travis Moore from work release did not place the decedents in any worse position than that which would have existed had the state not acted in the first instance by incarcerating Travis Moore. Thus, the case at bar is virtually identical to the situation in DeShaney where, if the respondents had never taken temporary custody of Joshua, he would still have been subject to his father's abuse. Likewise, if Travis Moore had never been incarcerated, the decedents would still have been subject to his violent actions.

Because Plaintiffs have failed to allege affirmative acts taken by Defendants which contributed to the danger faced by decedents, they have fallen short in complying with the first part of the King test.

**Causation**

The second part of the King test addresses the causal link between the alleged affirmative state acts and the injury, allowing recovery only if a defendant's acts were the proximate cause

of that injury. "[T]he state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense." King, 496 F.3d at 818 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996)). However, more than a simple "but for" is required for a successful claim, as the Supreme Court has stated: "[a]lthough a §1983 claim has been described as 'a species of tort liability,' . . . it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. California, 444 U.S. 277, 285 (1980).

Although it is true that the Defendants' actions were a "but for" cause of decedents' deaths – that is to say, but for Travis Moore's release, the decedents' deaths would not have occurred – this does not mean that their deaths were foreseeable. At the time of the tragic events underlying this case, Travis Moore had been on work release for several months and, with the exception of the two complaints from Sheena Sandage-Shofner, there is no indication referenced in the pleadings that Travis Moore had exhibited any violent tendencies while working at Porter Parking or while residing at the Correctional Center. Indeed, on the very day Travis Moore murdered Sheena Sandage-Shofner and Alfonzo Small, a drug counselor employed by Vanderburgh County had telephoned Travis Moore's caseworker at the Correctional Center to report that Travis Moore was doing very well in his counseling program. (Am. Compl. ¶ 26). Based on the information available to the Defendants at the time of the murders, it was far from clear that Travis Moore was violent to such a degree as would render his horrific actions on the morning of April 20, 2005, foreseeable to the Defendants.

As it was not foreseeable in a tort sense that allowing Travis Moore to remain on work release would lead to the deaths of Sheena Sandage-Shofner and Alfonzo Small, we hold that the

second part of the King test has not been satisfied.

### **Shocking the Conscience**

The third part of the King analysis examines whether the state conduct at issue "shocks the conscience." This part of the test limits liability under the "state-created danger" exception to conduct that violates an individual's substantive due process rights because it is "arbitrary in the constitutional sense." County of Sacramanto v. Lewis, 523 U.S. 833, 850 (1998). To determine whether state conduct in a given case shocks the conscience involves a fact-bound inquiry. Id. Because this standard lacks precise measurement, the Supreme Court has directed courts to look to "the tort law's spectrum of liability." Id. at 847-48. "Only conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience." *King*, 496 F.3d 819. In cases such as the one at bar, when state officials ostensibly had the opportunity for reasoned deliberations in their decisions, the official's conduct is conscience-shocking when it "evinces a deliberate indifference to the rights of the individual." Id.

However, before a court undertakes a determination of whether challenged conduct shocks the conscience, it must make sure that the conduct meets the minimum threshold of culpability for a constitutional violation. "[I]n all cases, the conduct must be more culpable than mere negligence, which is 'categorically beneath the threshold of constitutional due process.'" King, 496 F.3d at 819 (quoting Lewis, 523 U.S. at 849).

Although Plaintiffs have used the term "deliberately indifferent" liberally throughout their pleadings, the allegations regarding the omissions by Defendants actually amount to nothing more than negligence. Plaintiffs allege that Defendants failed to properly supervise

Travis Moore while he was on work release (Am. Compl. ¶ 38), and failed to adequately respond to warnings that Travis Moore was harassing Sheena Sandage-Shofner (Id. at39). However, neither of these allegations indicates that Defendants were deliberately indifferent to the safety of the decedents; any fault on the part of Defendants in failing to properly supervise inmates on work release and to properly disseminate complaints about those inmates was at most negligent – a breakdown of communication and organization.

Because the Plaintiffs have failed to satisfy any of the three parts of the King test, they have failed to establish a constitutional injury under the "state-created danger" exception capable of supporting relief in their favor.

### State Law Claims

Plaintiffs also allege that Defendants' actions violated Indiana tort law. However, pursuant to 28 U.S.C. § 1367(c), a federal district court may choose to decline to exercise supplemental jurisdiction where it "has dismissed all claims under which it has original jurisdiction." In addition, a presumption exists that the district court should relinquish jurisdiction over pendent claims where all claims under which the court has original jurisdictions are disposed of prior to trial. Alonzi v. Budget Construction Co., 55 F.3d 331, 334 (7th Cir. 1995); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993). Accordingly, given our decision that Plaintiffs have failed to state a claim for a constitutional injury under the "state-created danger" exception, the Court shall, in its discretion, decline to exercise supplemental jurisdiction in this case. Thus, Plaintiffs' Claims for Damages Under State Law are hereby dismissed without prejudice for lack of jurisdiction.

**Conclusion**

Defendants, the Board of Commissioners of Vanderburgh County, Indiana, the Vanderburgh County Sheriff's Department, Brad Ellsworth, and Tonda Mattingly have each moved to dismiss the Complaint against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiffs Christine Sandage and Arthur Shofner have failed to state a claim upon which relief may be granted.  For the reasons explained above, we hold that the decedents, Sheena Sandage-Shofner and Alfonzo Small, had no constitutional right to police protection from violent crime, and that, even if they did, the Defendants' failure to respond to Sheena Sandage-Shofner's complaints and to remove Travis Moore from work release did not result in a constitutional injury.  Therefore, Defendants' Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Date: 02/06/2008

*Sarah Evans Barker* (signature)

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS
jblanton@zsws.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Frederick William Schultz
GREENE & SCHULTZ
fschultz@kiva.net

13